# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEREK HINDLE AND MEREDITH PARTRIDGE, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No.<br>) 18-11306-FDS |
| v. | )<br>) |
| TOYOTA MOTOR CREDIT CORPORATION, | )<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

**SAYLOR, J.**

This is an action alleging false credit reporting arising from the termination of a vehicle lease. Plaintiffs Derek Hindle and Meredith Partridge allege that defendant Toyota Motor Credit Corporation ("TMCC") violated federal and Massachusetts law by reporting inaccurate information to credit agencies concerning the termination of the lease for their automobile. The amended complaint asserts various causes of action, including claims for violations of the federal Fair Credit Reporting Act and Mass. Gen Laws ch. 93A and claims under Massachusetts law for intentional and negligent infliction of emotional distress.[1] TMCC has moved to dismiss all claims against it under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

---

[1] The amended complaint has not been updated to reflect the withdrawal of plaintiffs' claims against other defendants. Accordingly, although the only remaining counts in the case are those against TMCC, they do not appear in consecutive order.

**I.     Background**

   **A.     Factual History**

The following facts are as alleged in the first amended complaint.

In 2015, Derek Hindle and Meredith Partridge leased a Toyota Prius from the Boch Toyota South ("Boch") dealership in North Attleboro, Massachusetts. (Am. Compl. ¶¶ 1, 8). The lease was held by TMCC. (Am. Compl. ¶ 19).

In the spring of 2017, Hindle and Partridge decided to purchase the Prius in order to lower their monthly payments. (Am. Compl. ¶ 20). On June 30, 2017, Hindle met with a Boch employee and signed paperwork that authorized Boch to pay off the remaining amount of the lease to TMCC, purchase the Prius from TMCC, and then sell the Prius to Hindle and Partridge. (Am. Compl. ¶¶ 21, 26). Hindle paid the Boch employee a $300 deposit. (Am. Compl. ¶¶ 27-28).

On July 3, 2017, Boch paid off the lease and purchased the Prius from TMCC. (Am. Compl. ¶¶ 29-30). On July 5, TMCC delivered the title to the Prius to Boch. (Am. Compl. ¶ 31). It appears that Hindle and Partridge continued to possess the Prius after July 3.

Hindle and Partridge allege that they attempted to set up a time to sign paperwork for a purchase loan Hindle was to receive from Boch. (Am. Compl. ¶¶ 32-44). After both sides apparently experienced scheduling issues, a Boch employee allegedly called Hindle and Partridge on July 25 and left a voicemail for each stating that they needed to come in and sign the loan paperwork immediately or Boch would "report the car as stolen." (Am. Compl. ¶¶ 44, 49). Apparently, Hindle and Partridge never executed the necessary paperwork, and thus never purchased the car.

Later that day, Hindle spoke with a TMCC representative on the phone; in their

conversation, the representative told Hindle that the lease was terminated and that Boch was the Prius's new owner. (Am. Compl. ¶¶ 53-55). TMCC also sent a letter to Hindle on July 25 that stated the lease was terminated. (Am. Compl. ¶ 56). That evening, Hindle turned the Prius in to Boch and canceled the car's registration with the Massachusetts Registry of Motor Vehicles. (Am. Comp ¶ 57).

At some point in the following days, Hindle received an e-mail from TMCC stating that his "monthly lease statement" was available. (Am. Compl. ¶ 61). Hindle called TMCC and was told that TMCC had "reactivated" the lease on July 31. (Am. Compl. ¶¶ 62-63). After Hindle told TMCC there had been a mistake, a TMCC representative allegedly told him to bring his complaint to "corporate." (Am. Compl. ¶¶ 65-66). Hindle called and lodged a complaint with what he believed to be TMCC's "corporate" office. (Am. Compl. ¶ 67). He called "corporate" a second time on August 10. (Am. Compl. ¶ 69).

Boch later returned to Hindle the $300 deposit that he had paid on June 30. (Am. Compl. ¶ 70). In September, Hindle and Partridge sent a demand letter under Mass. Gen. Laws ch. 93A to both Boch and TMCC; among other things, the letter stated that Hindle and Partridge "underst[ood] [TMCC] [was] reporting [their] lease payments as late and undisputed," that such reporting was "hurting [their] credit," that they felt it was "unfair of [TMCC] to be reporting the payments as late and undisputed," and that they were "disputing their alleged liability for payments due under the lease." (Am. Compl. ¶¶ 71-74).

According to the complaint, TMCC continued to report Hindle and Partridge's late lease payments as "undisputed" to credit bureaus. (Am. Compl. ¶¶ 82-83). On October 3, 2017, Hindle and Partridge wrote TMCC a letter advising that they continued to dispute the alleged liability. (Am. Compl. ¶ 84).

3

On December 6, 2017, Hindle and Partridge sent letters to the credit bureaus Equifax, Transunion, and Experian stating that they were disputing their alleged liability on the Prius. (Am. Compl. ¶ 88). Equifax, in turn, notified TMCC that Hindle disputed the liability. According to the complaint, TMCC continued nonetheless to report to Equifax that Hindle's liability was undisputed. (Am. Compl. ¶¶ 91-92).

### B. Procedural History

Hindle filed a complaint against Boch and John Doe #1 on June 21, 2018. On June 26, 2018 Hindle filed an amended complaint that added Partridge as a plaintiff as to the state-law claims and John Doe #2 and TMCC as defendants. On August 14, 2018, Hindle and Partridge dismissed their claims against Boch and both John Does. TMCC has now moved to dismiss the remaining claims against it under Fed. R. Civ. P. 12(b)(6).

## II. Analysis

### A. Fair Credit Reporting Act

The disagreement in this matter is small in scope. Both parties acknowledge that a consumer may pursue a private cause of action for violations of section 2(b) of the FCRA, 15 U.S.C. § 1681s-2(b). Section 2(b) provides that "after receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A)    conduct an investigation with respect to the disputed information;

(B)    review all relevant information provided by the consumer reporting agency pursuant to section 1681(a)(2) of this title;

(C)    report the results of the investigation to the consumer reporting agency;

(D)    if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on

4

> > consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
> > (i) modify that item of information;
> >
> > (ii) delete that item of information; or
> >
> > (iii) permanently block the reporting of that item of information.

The parties agree that TMCC received the requisite notice pursuant to § 1681i(a)(2) and that § 2(b) therefore covers this dispute.

The parties also agree on the relevant legal framework; they each cite cases for the proposition that TMCC may be liable under § 2(b)(D) for continuing to report Hindle's debt as "undisputed" to Equifax only if doing so was "misleading." *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009); *Saunders v. Branch Banking & Trust Co. of VA*, 526 F.3d 142, 148 (4th Cir. 2008).

Where the parties part ways is whether TMCC's reporting of Hindle's debt can be understood as "misleading" under these circumstances. In its motion to dismiss, TMCC essentially contends that its reporting to Equifax was not "misleading" because Hindle's dispute was "meritless," and therefore its failure to report the dispute to Equifax could not have had an "adverse effect" on Hindle. *Gorman*, 584 F.3d at 1163.

At this stage of the case, the Court is unable to conclude that Hindle's dispute was entirely without merit. On a motion to dismiss, a court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007).

According to the amended complaint, TMCC told Hindle by phone and by letter on July

25, 2017 that Boch had "paid off" Hindle's lease and thus that his lease was "over." The next Hindle heard from TMCC was in an e-mail stating his monthly lease statement was available. Hindle alleges that he called TMCC soon thereafter; when TMCC told Hindle that the lease had been "reactivated" on July 31, he responded that something must be wrong. Since that day, Hindle alleges that he has continuously disputed any debt that TMCC claims he owes.

Of course it may well be true that Hindle is mistaken, that the lease's reactivation should have been obvious, or that his dispute over the lease is otherwise without merit. But that is not the standard on a motion to dismiss. Accordingly, TMCC's motion will be denied as to the FCRA claim.

### B. Infliction of Emotional Distress

Hindle and Partridge further allege that TMCC both intentionally and negligently caused them to suffer emotional distress by reinstating their lease, reporting their lease as late and undisputed, and refusing to change its reporting to credit agencies that the lease was being disputed.

#### 1. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under Massachusetts law, a plaintiff must allege (1) that the defendant either intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the conduct caused the plaintiff emotional distress; and (4) that the emotional distress was severe and of a nature that no reasonable person could be expected to endure it. *Hussain v. Hosking*, 2016 WL 696095, at *3 (D. Mass. Feb. 19, 2016) (citing *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976)).

Conduct is "'extreme and dangerous' only if it is so 'outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Lozano v. Suffolk Superior Court*, 2015 WL 5684071, at *4 (D. Mass. Sept. 28, 2015) (quoting *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987)). Recovery for an IIED claim generally "requires more than 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) (quoting *Foley*, 400 Mass. at 99).

The facts here do not rise to the level of extreme and dangerous conduct, or anything to close to it. And even assuming that TMCC's behavior towards Hindle and Partridge may have been improper, nothing alleged by Hindle and Partridge suggests that TMCC acted with the requisite degree of intent. Accordingly, the motion to dismiss will be granted as to the IIED claim.

### 2. <u>Negligent Infliction of Emotional Distress</u>

To state a claim for negligent infliction of emotion distress under Massachusetts law, a plaintiff must allege "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a person would have suffered emotional distress under the circumstances of the case." *Payton v. Abbott Labs*, 386 Mass. 540, 557 (1982).

As to fourth element —physical harm manifested by objective symptomatology— Hindle and Partridge contend only that they experienced a "great deal of stress and anxiety" and that their emotional distress "manifested itself in physical symptoms."

Although Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,'" [] it demands

7

more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, a claim of injury arising out of negligent infliction of emotional distress requires specific factual allegations, not a mere "formulaic recitation of the elements." *Iqbal*, 556 U.S. at 678. The amended complaint does not meet that standard. Accordingly, the motion to dismiss will be granted as to the NIED claim.

### C. Chapter 93A: Massachusetts Consumer Protection Act

Finally, Hindle and Partridge allege that TMCC violated Mass. Gen. Laws ch. 93A. TMCC contends that the Chapter 93A claim is preempted by the FCRA, because reporting on a discharged debt is "exactly the type of conduct that Congress intended to regulate under the FCRA." *Lance v. PNC Bank, N.A.*, 2015 WL 5437090 at *5 (D. Mass. Sept. 15, 2015).

Hindle and Partridge acknowledge that the FCRA preempts many state-law claims related to credit reporting, but contend that TMCC's conduct falls under the exception in the FCRA covering circumstances where the defendant furnished false information with "malice or willful intent to injure." 15 U.S.C. § 1681h(e). Hindle and Partridge contend that a reasonable factfinder could conclude, based on the "detailed allegations," that TMCC ignored their dispute, conspired with Boch, and left Hindle unable to get a replacement car, and that TMCC accordingly acted with malice or the willful intent to injure. The Court disagrees. While the pleadings are sufficient to allege that TMCC violated its duties under the FCRA, and that Hindle and Partridge suffered negative consequences due to that violation, nothing in the amended complaint suggests that TMCC acted with "truly malicious" intent, instead of "simpl[e] careless[ness]," necessary to fit within the statutory exception. *Ross v. F.D.I.C.*, 625 F.3d 808, 817 (4th Cir. 2010). Accordingly, the motion of TMCC will be granted as to the Chapter 93A

8

claim.

## IV. Conclusion

For the foregoing reasons, the motion of defendant Toyota Motor Credit Corporation to dismiss for failure to state a claim upon which relief can be granted will be DENIED as to the claim under the Fair Credit Reporting Act (Count 1) and will be GRANTED as to the claims of intentional infliction of emotional distress (Count 7), negligent infliction of emotional distress (Count 10), and for violation of Mass. Gen. Laws ch. 93A (Count 11).

**So Ordered.**

Dated: November 16, 2018

/s/ F. Dennis Saylor
F. Dennis Saylor, IV
United States District Judge